**SCREWS et al. v. UNITED STATES.**

**No. 10834.**

Circuit Court of Appeals. Fifth Circuit.

Jan. 14, 1944.

Rehearing Denied Feb. 18, 1944.

J. F. Kemp and Clint W. Hager, both of Atlanta, Ga., and Robert B. Short, of Newton, Ga., for appellant.

T. Hoyt Davis, U. S. Atty., and John P. Cowart, Asst. U. S. Atty., both of Macon, Ga., and G. Maynard Smith, Sp. Asst. to the Atty. Gen., for appellee.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellants were indicted, tried, and convicted, for an alleged violation of Sec. 20 of the Criminal Code, being Sec. 52, of Title 18 U.S.C.A., and for a conspiracy to violate said Sec. 52 of Title 18. It was alleged that the appellant Screws, while sheriff of Baker County, Georgia, and appellant Jones, while acting as a policeman of the City of Newton, in Baker County, Georgia, both aided and abetted by appellant Kelley, did, under color of the law of Georgia, arrest or cause one Robert Hall, a negro citizen of the United States and of the State of Georgia, to be arrested, and brought into the courthouse yard of Baker County, where said Robert Hall was beaten over the head with a blackjack by defendants, from which the death of the said Robert Hall resulted. The substantive offense, alleged in Count 2, was that the appellants were acting under color of the law of the State of Georgia and deprived the said Robert Hall of rights, privileges, and immunities secured or protected by the Constitution and laws of the United States, among other things the right to be secure in his person and to be immune from illegal assault and battery; the right and privilege not to be deprived of life and liberty without due process of law; the right and privilege not to be deprived of the equal protection of the law; the right to be tried, upon the charge upon which he was arrested, by due process of law; and the right and privilege not to be subjected to different punishments, by reason of his race and color, than are prescribed for the punishment of other citizens.

The third count in the indictment charged a conspiracy to commit the offense charged in the second count.

Appellants challenged by demurrer the jurisdiction of the court below, asserting that in the killing of Hall and the doing of the other acts charged in the indictment they did not violate Section 52 of Title 18 because the rights, privileges, and immunities enumerated in the indictment are "fundamental or natural rights" which do not have their origin in the Constitution and laws of the United States; that these natural and inalienable rights find their source in the sovereignty of the States, whose duty it is to secure and protect these rights, and that the beating and killing of Hall deprived him of rights afforded by the State rather than by the Constitution and laws of the United States; secondly, it was asserted that the 14th Amendment to the Constitution was a prohibition against deprivation by the State of the life, liberty, or property of any person without due process of law, or against the deprivation by the State of the equal protection of the law to any person within its jurisdiction, and that the prohibitions of the 14th Amendment were not applicable to the individual or personal acts of a citizen; and, thirdly, that Section 52 could not be applied to situations where a sheriff or other State officer was acting contrary to and against the positive prohibition of State law.

Does Sec. 52, Title 18, U.S.C.A., confer jurisdiction upon the federal court to try a sheriff, a policeman, and another (who aided and abetted the two officers) for unlawfully beating to death one under arrest and in custody of such officers, on the theory that such beating and consequent death was done under color of State law and was a willful deprivation of rights, privileges, and immunities secured or protected to the deceased by the Constitution and laws of the United States?

The pertinent part of the 14th Amendment to the Constitution provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Section 5 of the 14th Amendment provides that: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article", pursuant to which, and in order to implement the 14th Amend-

ment, Congress enacted what has now come to be Sec. 52 of Title 18, U.S.C.A., which is as follows: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects, or causes to be subjected, any inhabitant of any State, Territory, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution and laws of the United States, or to different punishments, pains, or penalties, on account of such inhabitant being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined not more than $1,000, or imprisoned not more than one year, or both."

Sec. 88, Title 18 U.S.C.A., provides in substantial part that if "two or more persons conspire * * * to commit any offense against the United States, * * * and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

The lower court properly overruled the demurrer to the second and third counts of the indictment upon which the defendants were tried and convicted.

■■■ The right to the enjoyment of life and liberty is a fundamental or natural right, and is not derived from nor created by the Federal Constitution.[1] Nevertheless, the 14th Amendment was designed to safeguard and protect the individual against the deprivation without due process of law of those rights by the State rather than to create new rights in the individual. Sec. 52 of Title 18 does not merely undertake to protect rights which are derived from the Federal Constitution but it undertakes to protect and make secure any rights secured or protected by the Federal Constitution and laws, and to that end makes criminal the wrongful deprivation of any rights that are secured or protected by the Constitution or laws of the United States. Clearly the right to be secure in one's person and to be immune from illegal arrest and battery, or the right not to be deprived of life or liberty without due process of law, and the right to enjoy the equal protection of the laws, are rights "secured or protected" by the Constitution of the United States, and this ground of the demurrer was not tenable.

■■■ The second ground of the demurrer, to the effect that the 14th Amend-

---

[1] United States v. Cruikshank, 92 U.S. 542, 553, 23 L.Ed. 588.

ment was a prohibition against the deprivation by the State of the constitutional rights covered thereby, and that the prohibitions of the 14th Amendment are not applicable to individual or personal acts of the citizen, has as its base a fundamentally correct concept.[2] However, Sec. 52 of Title 18, and the indictment drawn thereunder, are not intended to cover personal and individual acts of a citizen in wrongfully depriving another citizen of constitutional rights.[3] The section would have no applicability to a citizen who acts without any color of law, statute, ordinance, regulation, or custom of the State, or without the name or by the authority of the State. The act can only be applicable to one who acts under guise of authority of the State and thus brings about the illegal deprivation of constitutional rights. The statute was not designed to reach and cannot be stretched to reach the personal, individual act of one citizen toward another when same is not done under color of State law, even though the depriving actor were the holder of public office.

In the present case the sheriff contended both before and during the trial that he was acting pursuant to a warrant issued commanding him to arrest and take into custody Robert Hall for the alleged theft of a tire. A warrant can issue and be served only under color, or authority, of law. A void warrant, in the hands of the sheriff or his deputy, is color of authority, and acts done in the execution of such a warrant are done under color of law. The deprivation of the constitutional rights of one citizen by another is not a violation of Section 52 and becomes a violation only when the depriving citizen is acting under color of law, as distinguished from acting within the law.[4] A sheriff who, acting under a valid warrant in making a necessary and lawful arrest and who in self-defense slays the person he seeks to arrest, has not violated the section, but if a sheriff were acting only under a pretext or color of law and in so doing unlawfully caused the death of another, such sheriff would be amenable to the section in question. The deprivation

of liberty or property or life under valid State law constitutes no offense under the act, but it is a deprivation of a constitutional right under a mere pretense or color of law by one pretending to act under the authority of the State that calls the section into operation. In the instant case there is evidence to the effect that the alleged warrant of arrest was prepared by the sheriff and was a spurious afterthought. Be that as it may, he insisted that he was acting under color of authority in making the arrest. Assuming that the sheriff was possessed of a valid warrant, although there was evidence in the case to the contrary, the beating of a prisoner to death is not necessarily an incident to the making of a lawful arrest. The wrongful beating of a prisoner by an arresting officer acting under a warrant, whether void or valid, is an unlawful deprivation of a right of a citizen of the United States which the 14th Amendment protects, and which Sec. 52 makes a criminal offense, the constitutionality of which section is not raised.

The jury has found, under the overwhelming weight of the testimony, that the beating of the said Robert Hall to his death by the defendants was without justification and not in necessary self-defense and not in the exercise of such force as was reasonably necessary to make a lawful arrest or to repel an assault.

The third contention of appellants is that the section in question does not embrace the personal, unofficial, and individual acts of one who holds an office unless those acts were perpetrated under the guise or authority of State law. It may be conceded that if the sheriff gets into an altercation in a matter that is strictly personal and which has no connection with his official functions or duties and which arises out of no claim or effort or color of the exercise of lawful authority, the statute would not apply. Certainly the State is not to be held responsible for the unofficial and wholly personal acts of an individual who merely happens to be sheriff. If John Smith, who happens to be sheriff, is the owner of a house which he rents to Bill Johnson, and he and Bill

---

[2] United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; State of Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667; Hodges v. United States, 203 U.S. 1, 27 S.Ct. 6, 51 L.Ed. 65.

[3] Chicago, B. & Q. R. Co. v. City of Chicago, 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979; Huntington v. City of New York, C. C., 118 F. 683.

[4] "'Color of law' does not mean actual law. 'Color,' as a modifier, in legal parlance, means 'appearance as distinguished from reality.' Color of law means 'mere semblance of legal right'." McCain v. Des Moines, 174 U.S. 168, text 175, 19 S.Ct. 644, 646, 43 L.Ed. 936.

Johnson get into a fight over the failure of Johnson to pay rent to Smith, and in the fight Johnson is subjècted to the loss of his life, such act would not call the federal statute into operation. It is essential that the act of deprivation not only be unlawful, but that it be committed under color or pretense of law.

The 14th Amendment renders State statutes unconstitutional which deny equal protection of the law, due process of the law, etc., but Sec. 52 makes punishable acts done by one under color or pretense of law which result in the deprivation of rights protected by the Federal Constitution.

The motion for directed verdict was based upon substantially the same grounds as were the demurrers, viz, the jurisdiction of the court. We are of the opinion that the court below had jurisdiction, that the evidence overwhelmingly supports the verdict of the jury, and that the judgment of the lower court should be affirmed.

Affirmed.

SIBLEY, Circuit Judge (dissenting).

Horror at what happened in this case has, I think, interfered with a calm considera-tion of the law involved. Certainly, if the evidence for the prosecution is credited, the appellants ought to be in the penitentiary. The question is, ought they to be in a penitentiary of the United States?

Death resulted from the beating of a prisoner on the head with a club. The prisoner's loaded shotgun was at hand, and one officer had a pistol. No one attempted to shoot the prisoner. When he appeared to be in a bad condition he was taken at once by the sheriff into another county to a hospital. I do not think it was a wilful murder, but rather that it was involuntary manslaughter in the commission of an unlawful act. The indictment does not charge an intentional killing, and no such issue was submitted to the jury.

What does the indictment charge? Count 2 is the key count, being merely repeated in Count 3 as a conspiracy. In it there is an elaborate list of rights and immunities alleged to be secured and protected by the Fourteenth Amendment of the Constitution, but these are allegations of law. It is alleged that the defendants acted under color of the law of Georgia and the City of Newton, but no special act of the Legislature or ordinance of the town is mentioned. The fact allegations are these: Screws, being State Sheriff, and Jones, being a city police

officer, wilfully deprived Hall of his rights under the Fourteenth Amendment, "that is to say, the defendants arrested and caused to be arrested said Hall * * * and then and there unlawfully and wrongfully did assault, strike and beat said Hall about the head with human fists and a blackjack, causing injuries which were the proximate and immediate cause of his death". The arrest is not alleged to be unlawful, but only the beating. Do these facts make a crime against the United States? The affirmative answer is sought in Section 20 of the Criminal Code, the applicable words being: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects * * * any inhabitant of any State, Territory or District to the deprivation of any rights, privileges and immunities secured or protected by the Constitution and laws of the United States * * * shall be fined * * * or imprisoned * * * or both."

Who is protected? Any inhabitant of any part of the United States territory.

Who is punishable? Whoever acts under color of any law or custom. The statute does not mention State laws, or State customs, or State officers, but applies equally to federal or territorial laws and customs and officers, and indeed to all persons acting by virtue of any supposed law or custom, whether valid or invalid. The statute does not mention the Fourteenth Amendment and does not profess to be "appropriate legislation" to enforce it. It takes hold of every person in the United States and makes him a potential criminal if he acts under color of any law or custom.

What does it forbid? Wilful deprivation of any right secured or protected by the Constitution and laws of the United States. Wilful, I take it, means intentional, not by accident or misfortune. Does it mean that a particular clause of the Constitution was in mind, with a definite intention to violate it? In this case there is no reason to suppose that Screws and Jones once thought of the Fourteenth Amendment, or that they knew much or anything about it. The jury were not instructed to make any such enquiry. The accused intentionally beat Hall, and the jury were told that was enough, if not justified.

Now it is a common form of legislation to say that a violation of any provision of a particular act shall be a crime. The citizen has everything before his eyes and can readily know what he may not do. Far

more serious would it be to attempt to make criminal "every deprivation of rights secured" even by one elaborate act, say the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., or the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. If this statute had confined itself to punishing State officers for helping a State to deprive any person of life, liberty or property without due process of law, contrary to the Fourteenth Amendment, which is the function here assigned to it, it seems to me it would have been too vague to make a good criminal statute, for not even the judges on the bench know just what that portion of the Fourteenth Amendment means, and ideas about it have changed very greatly since Section 20 was first enacted. What it does is to gather up every provision of the Federal Constitution, and every provision of every federal statute which may secure or protect any sort of personal, civil, property or political right, and declare it to be a crime to deprive anyone of his right. Who can enumerate what rights are secured by the Bill of Rights of the Federal Constitution? Or by the prohibitions against State action in the original Constitution, or the Thirteenth, Fourteenth and other Amendments? Or in such laws of the United States as the Interstate Commerce Act, the National Labor Relations Law, the Railway Labor Act, Federal Employers' Liability Act, War Risk Insurance Act, Harbor Workers' Act, Seamen's Acts, Fair Labor Standards Act, and fifty others? It seems to me that such wholesale criminal legislation is not constitutionally possible, because there is in it no ascertainable standard of guilt, and the right to be precisely informed of the things to be charged as crimes is not practically preserved. United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S. Ct. 298, 65 L.Ed. 516, 14 A.L.R. 1045.

The statutory words, taken in their full sweep, would involve startling consequences. Judges and prosecuting officers, State and federal, tread on dangerous ground. An intentional refusal to send for witnesses, to furnish counsel, to grant a prompt trial, or a full indictment, may make them criminals. Many federal boards have made many "regulations", some of which no doubt are contrary to rights secured by the federal laws. Those who act under color of such regulations are liable to prosecution. Every State Sheriff or United States Marshal who uses force on a prisoner, every prison warden who disciplines, is liable to have to answer a federal indictment, as to whether his act was lawful, or only under color of law. A warden censors a prisoner's mail; does he deny his rights under the postal laws? A law of Georgia permits a landowner to impound trespassing cattle till damages are paid. If under color of this law one impounds cattle and then kills and eats them unlawfully, he is of course a criminal under State law, but as he has, under color of a law, taken property without due process of law he also must suffer federal imprisonment. In this very case Jones and Screws had, a few days before, apparently without due process, taken Hall's pistol. They might have been federally indicted for that. When Hall was arrested his shotgun was taken from his home, not in a search of his person but apparently without lawful warrant. This was federally indictable. Policemen everywhere arrest without warrant unlawfully. They are all guilty of wilfully depriving the prisoner of liberty without due process of law, and indictable under this statute, taken at its face value.

But it is said the present is a clear case of deprivation of rights, and a serious one because life was taken, even if not wilfully taken. Who is to decide whether the right is a clear one, or how serious the deprivation must be? The judge and jury? Thus construed, the statute falls squarely under the decision in the Cohen Grocery case, supra.

The only reasonable construction of the statute which it seems to me could be upheld is that where one, knowing a law or regulation or custom is contrary to a right secured by the Federal Constitution or laws, wilfully undertakes to enforce the law or regulation or custom, he shall be punished. There is here no law or regulation or custom to beat a prisoner, white or black. It is lawful to subdue one, if he resists or attacks the arresting officer. That law is not contrary to any right federally secured. It is also a custom in Georgia to strike one who calls you to your face a "son of a bitch", but as the District Judge charged the jury in this case the privilege of resenting such words does not extend to an arresting officer. There is not shown here by allegation or evidence or judicial notice any law, regulation or custom under color of which Screws and Jones struck Hall unless, as they claimed, to subdue him, which would not have deprived him of any right. If they simply struck him unlawfully, as alleged, they are liable on their official bonds, they are liable in damages for assault and bat-

tery, and they are liable to criminal prosecution under Georgia law, and because of the fatal consequence, the prosecution may be for involuntary manslaughter or perhaps murder. I do not think Section 20, if sustainable at all, can be applied to the case.

### On Petition for Rehearing.

PER CURIAM.

The petition for rehearing in the above-styled cause is hereby denied.

SIBLEY, Circuit Judge, favors a rehearing.

WALLER, Circuit Judge (specially concurring).

It is my view that Section 52 of Title 18 U.S.C.A., is an anti-discrimination statute, under which it must be alleged and shown that the deprivation of federal right was on account of the alienage, race or color of the deprivee, but the contrary was held in United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, which holding I, unapprovingly, must follow. In the present state of the law, as construed by the Supreme Court, the petition for rehearing is properly denied. The recent decision in Snowden v. Hughes, 64 S.Ct. 397, by that court, is not in conflict with the views expressed by this court in the former opinion in this case.